UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                              )   Case No. 07 B 6781
                                    )
STEPHEN A. WEISS,                   )   Hon. Pamela S. Hollis
                                    )
    Debtor.                         )   Chapter 11

## MEMORANDUM OPINION

This matter comes before the court on the motion of R.C.M. Industries, Inc. ("R.C.M.") and Robert C. Marconi, as Trustee of the Robert C. Marconi Declaration of Trust dated June 30, 1992 (the "Marconi Trust"), for Relief from Automatic Stay [EOD #18]. R.C.M. and the Marconi Trust seek relief from the stay in order to foreclose on their collateral pursuant to 11 U.S.C. § 362(d). The debtor, Stephen A. Weiss ("Weiss"), argues that R.C.M. and the Marconi Trust are not entitled to relief from the stay because they are not secured creditors of the estate. Alternatively, Weiss asserts that even if these creditors are secured, they are adequately protected. Because the court finds that R.C.M. and the Marconi Trust are not secured creditors, the motion for relief from stay is denied.

## FINDINGS OF FACT

Weiss filed his voluntary Chapter 11 petition on April 16, 2007. On April 18, 2007, R.C.M. and the Marconi Trust filed the instant motion. On July 12, 2007 and July 13, 2007, the court held an evidentiary hearing in this matter. At the close of evidence the court requested the parties to submit post trial briefs on the issue of whether Weiss' assignment of his interests in several closely held companies to R.C.M. and the Marconi Trust was valid. Weiss maintains that he had no power to pledge his interests because the prior approval of his fellow members or

partners was not obtained. The court agrees with Weiss, so findings regarding the value of the business interests, relevant only to the extent R.C.M. and the Marconi Trust are secured and entitled to adequate protection, will not be addressed here. The following shall constitute the relevant findings of fact:

1. On or about April 1, 2004, Weiss executed two promissory notes: one in favor of R.C.M. on behalf of Weiss in the amount of $410,000 and one in favor of the Marconi Trust on behalf of Weiss and Fortune Financial Corporation, a company owned by Weiss, in the amount of $210,000.

2. Also on or about April 1, 2004, Weiss executed a pledge agreement designed to secure payment on the two promissory notes (hereinafter "Pledge Agreement").

3. No evidence was introduced to establish that the Pledge Agreement was signed by Weiss before R.C.M. and the Marconi Trust advanced funds to Weiss. Indeed, the loans to Weiss and Fortune Financial Corporation were restructured several times and the court is unable to determine if R.C.M. and the Marconi Trust actually relied on the Pledge Agreement before advancing funds.

4. The Pledge Agreement purportedly granted to R.C.M. and the Marconi Trust "a first priority security interest in and to all of [Weiss'] assigned right, title and interest in, and to the Assigned Interests [as defined therein] and all rights in Halyard Management Companies which accompany such Assigned Interests, . . ." Debtor Ex. 4-12; R.C.M. & Marconi Trust Ex. 3.

5. The Halyard Companies are individually governed by separate operating or partnership agreements, each of which contains a provision restricting the transferability of the business

2

interest without consent of the other owners or managers. A summary of the relevant provisions of the various operating agreements is included below.[1]

| Halyard Lombard, LLC | No Member shall Transfer. . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or part of his, her or its Membership Interest whether voluntarily or by operation of law, without in each instance obtaining the prior written consent of the Managers, which consent may be withheld in their sole and absolute discretion. . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | Debtor Ex. 4-1, Art. 6.1(a), Art. 1.43 |
|---|---|---|
| Halyard St. Charles, LLC | [N]o Member shall Transfer . . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or part of his, her or its Membership Interest whether voluntarily or by operation of law, without in each instance obtaining the prior written consent of the Managers. . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | Debtor Ex. 4-2, Art. 6.1(a), Art. 1.43 |
| Halyard Lakewoods, LP | No Limited Partner shall sell, transfer, assign, pledge, mortgage or otherwise dispose of its Partnership Interest, or any portion thereof, without the prior written consent of the General Partner. . . . | Debtor Ex. 4-3, Art 15.1 |
| Halyard Farnsworth, LLC | No Member shall Transfer . . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or any part of his, her or its Membership Interest whether voluntarily or by operation of law, without in each instance obtaining the prior written consent of the Manager, which consent may be withheld in the Manager's sole and absolute discretion. . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | Debtor Ex. 4-4, Art 6.1(a), Art. 1.42 |
| Halyard Square, LLC | No Member shall Transfer . . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or any part of his, her or its Membership Interest whether voluntarily or by operation of law, without in each | Debtor Ex. 4-5, Art. 6.1(a), Art. 1.42 |

---

[1] The parties do not contest the validity of the underlying operating agreements. The court notes that the operating agreement for Halyard St. Charles, LLC is governed by Delaware law. Illinois law controls all other Halyard Companies, with the exception of Halyard Lombard, LLC, which contains a choice of law provision that does not specify the controlling state. This table summary is taken from Debtor's Trial Brief in Support of Debtor's Dispute of Perfected Security Interest at pp. 3-5.

3

| | | |
|---|---|---|
| | instance obtaining the prior written consent of the Manager, which consent may be withheld in the Manager's sole and absolute discretion. . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | |
| Halyard Branding, LLC | [N]o Member shall Transfer . . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or any part of his Membership Interest whether voluntarily or by operation of law, without in each instance obtaining the prior written consent of the Manager . . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | Debtor Ex. 4-6, Art. 6.1(a), Art. 1.4 |
| Halyard Group, LLC | [N]o Interest Holder shall have the right, as to all or any part of its Membership Interest or Economic Interest to: (a) sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration, . . . | Debtor Ex. 4-7, Art. 1.101(a) |
| Halyard Clarke, LLC | No Member shall Transfer . . . , or (ii) contract to Transfer . . . , or (iii) suffer or permit the Transfer of all or any part of his, her or its Membership Interest whether voluntarily or by operation of law, without in each instance obtaining the prior written consent of the Manager, which consent may be withheld in the Manager's sole and absolute discretion. . . .<br><br>'Transfer' shall mean the sale, assignment, conveyance, gift or other transfer of Membership Interests. . . . | Debtor Ex. 4-8, Art. 6.1(a) and Art. 1.42 |
| D&S LP | No Limited Partner shall sell, transfer, assign, pledge, mortgage or otherwise dispose of its Partnership Interest, or any portion thereof, without the prior written consent of the General Partner. . . .<br><br>The General Partner shall not, without the written consent of the Class A Limited Partner, sell, assign, convey all or any portion of its interest as a General Partner of the Partnership. . . . | Debtor Ex. 4-9, Art. 17.1, Art 17.2 |
| Halyard Equities, LLC | Except as otherwise specifically provided herein, or consented to in writing by all the Members[,] no Interest Holder shall have the right to sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration, . . . all or any part of its Membership Interest or Economic Interest. . . . | Debtor Ex.4-10, Art. 10.01 |

4

6. As reflected above, each operating or partnership agreement contains similar language restricting the rights of its members, partners or interest holders to transfer their interests in the Halyard Companies. The agreements expressly require written consent by all limited liability company members or partners, or the manager, prior to any transfer of interests.[2]

7. Pursuant to each of these operating agreements, Weiss could not transfer all, *or any part of*, his interest in the Halyard Companies unless the other members or partners consented in writing *prior to* the transfer.

8. The necessary written consents were not obtained prior to Weiss' execution of the Pledge Agreement.

9. Weiss informed R.C.M. and the Marconi Trust that he did not have the authority to assign his interests in these companies prior to executing the Pledge Agreement.

10. Weiss communicated this by crossing out a portion of a paragraph in the Pledge Agreement titled "Assignor Owns Its Interests." As originally drafted, this paragraph stated "Assignor is the sole owner of each Assigned Interest, free from any lien, security interest, claim or encumbrance, *has the right to grant to Assignee a first priority security interest in such Assigned Interests*, and will defend the Assigned Interest against the claims and demands of any and all persons at any time claiming the same or any interest in the Assigned Interest." Debtor Ex. 4-12 (emphasis added).

11. After Weiss crossed out the italicized phrase above, he returned the draft pledge agreement to Robert Marconi.

---

[2] The operating agreement for the Halyard Group, LLC states that the interests cannot be transferred. It does not provide for valid transfer with prior written consent.

5

12. James Gottlieb, an attorney who previously represented R.C.M. and the Marconi Trust, prepared the Pledge Agreement. Gottlieb testified that Weiss mailed him the Pledge Agreement with the above-referenced language crossed out.

13. Attorney Gottlieb acknowledged that Weiss raised the consent issue before signing the Pledge Agreement.

14. As reflected in R.C.M. and the Marconi Trust's Exhibit 3, attorney Gottlieb revised the Pledge Agreement to delete the language stating that Weiss had the right to grant a security interest in the Halyard Companies.

15. Despite express notice from Weiss, attorney Gottlieb did not advise R.C.M. and the Marconi Trust to obtain the necessary consents. There was also no evidence introduced that Weiss was requested by attorney Gottlieb or anyone else to obtain the consents.

16. Attorney Gottlieb believed that the Pledge Agreement would be enforceable between Weiss, R.C.M., and the Marconi Trust, even though Weiss maintained he did not have the power to assign his interests.

17. Before the Pledge Agreement was executed, R.C.M. and the Marconi Trust knew that Weiss believed he did not have the power to pledge his interests in the Halyard Companies without the necessary consents. Nevertheless, the consents were not obtained before Weiss executed the Pledge Agreement.

18. On or about June 9, 2004, both R.C.M. and the Marconi Trust filed U.C.C.-1 financing statements describing the collateral purportedly assigned by Weiss in the Pledge Agreement, referring to Exhibit A and schedule 1. The schedule 1's attached to both creditors' filings are identical. Each schedule 1 indicates that Weiss' "entire interest" in the various Halyard Companies is pledged. R.C.M. & Marconi Trust Ex. 4.

19. Weiss defaulted on the loans, and on or about March 1, 2007, attorneys for R.C.M. and the Marconi Trust notified Weiss of the default in writing, specifically stating:

> please keep in mind that we intend to exercise our rights to collect all distributions and payments in the assigned interests (see 3.2(b)). Additionally, we are asserting our right to claim *all* of your interest in the Halyard Properties...

R.C.M. & Marconi Trust Ex. 20 (emphasis added).

20. Sometime in April of 2007, Weiss filed his "Verified Complaint for Declaratory, Injunctive and Other Relief," in the Circuit Court of Cook County, No. 07 CH 10206, seeking to enjoin R.C.M. and the Marconi Trust from selling Weiss' interests in the Halyard Companies. Among other things, the Complaint alleged that the security interests created by the Pledge Agreement were invalid for failure to obtain prior written consents of the other members, partners or managers of the Halyard Companies. Debtor Ex. 4.

21. In response to Weiss' lawsuit, on or about April 12, 2007, attorneys for R.C.M. and the Marconi Trust wrote a letter to David Kaufman's attorney, Alvin Becker, requesting that David Kaufman, an individual who held various membership interests in the Halyard Companies, retroactively consent to Weiss' assignment or agree to waive any objection to Weiss' attempted transfers. Kaufman signed this waiver in April 2007, just days before Weiss filed this bankruptcy and over three years after the transfers. R.C.M. & Marconi Trust Ex. 8.

22. No effort was made to obtain Kaufman's consent prior to Weiss' execution of the Pledge Agreement. Indeed, Kaufman testified he never gave consent for any transfers of Weiss' Halyard Companies' interests until he executed the waiver in April of 2007.

23. Kaufman was not aware of Weiss' purported pledge to R.C.M. and the Marconi Trust until Kaufman ran a Uniform Commercial Code search on Weiss in October of 2005. Upon

discovery of the pledge in 2005, Kaufman testified he was very upset and flabbergasted that Weiss did not ask Kaufman to buy him out of the Halyard Companies.

24. Although counsel for R.C.M. and the Marconi Trust argued in their post trial brief that Larry Blankstein, who also held various membership interests in the Halyard Companies, did not obtain his interests in the Halyard Companies until after Weiss executed the Pledge Agreement, no evidence was introduced at trial to support this assertion. The only evidence introduced was that Blankstein was a manager of and owned some interests in the Halyard Companies. Blankstein did not consent to Weiss' attempted assignment.

25. On or about April 13, 2007, the state court denied Weiss' request for an injunction, and ruled that Weiss had an adequate remedy at law, i.e., a right to money damages, if R.C.M. and the Marconi Trust pursued a wrongful sale of his interests. Transcript of Proceedings in 07 CH 10206, April 13, 2007 (attached as an exhibit to R.C.M. and the Marconi Trust Post Trial Brief).[3]

26. Three days later, Weiss filed this Chapter 11 case, and R.C.M. and the Marconi Trust immediately filed their motion for relief from the automatic stay, seeking to proceed against Weiss' interests in the Halyard Companies.

27. Weiss' bankruptcy schedules in this case reflect substantial secured and unsecured debt, with many hundreds of thousands of dollars owed to unsecured and secured creditors, not including R.C.M. and the Marconi Trust.

28. Weiss' interests in the Halyard Companies are his primary asset. Without R.C.M. and the Marconi Trust's claim against Weiss' interests in the Halyard Companies, there is greater equity available for all creditors of Weiss' estate. As the primary asset, Weiss' interests in the Halyard Companies are necessary for an effective reorganization.

---

[3] The court takes judicial notice of the ruling contained in the state court transcript pursuant to Federal Rule of Evidence 201.

## CONCLUSIONS OF LAW

Bankruptcy Code Section 362(d) provides two grounds for relief from the automatic stay. 11 U.S.C. § 362(d). "The first ground is cause, including lack of adequate protection." In re Tewell, 355 B.R. 674, 679 (Bankr. N.D. Ill. 2006). The second ground is that the debtor lacks equity in the property and the property is not necessary to an effective reorganization. Id.; 11 U.S.C. § 362(d)(2)(A), (B). "The decision to modify or otherwise annul the automatic stay pursuant to § 362(d) is committed to the sound discretion of the bankruptcy court." Id.

With respect to the second ground for relief, the court has found that Weiss' interests in the Halyard Companies are necessary to an effective reorganization, and accordingly, R.C.M. and the Marconi Trust are not entitled to relief under Bankruptcy Code Section 362(d)(2). Therefore, RCM and the Marconi Trust must demonstrate that they are entitled to relief under Bankruptcy Code Section 362(d)(1).

In order to prevail under Bankruptcy Code Section 362(d)(1), R.C.M. and the Marconi Trust must establish the following elements: (1) a debt owing from Weiss to R.C.M. and the Marconi Trust; (2) a security interest held by R.C.M. and the Marconi Trust that secures the debt at issue; and (3) a decline in the value of the collateral securing the debt, along with Weiss' failure to provide adequate protection of their interest. In re Bivens, 317 B.R. 755, 770 (Bankr. N.D. Ill. 2004) (citing In re Cambridge Woodbridge Apartments, L.L.C., 292 B.R. 832, 841 (Bankr. N.D. Ohio 2003)). The parties do not dispute that Weiss owes a debt to R.C.M. and the Marconi Trust. At issue is R.C.M. and the Marconi Trust's assertion that they hold security interests in Weiss' interests in the Halyard Companies by virtue of the Pledge Agreement. As

discussed *infra*, R.C.M. and the Marconi Trust do not have a security interest in Weiss' interests in the Halyard Companies, and therefore, are not entitled to relief from the stay.[4]

Validity of the Assignment

R.C.M. and the Marconi Trust argue that their security interests were properly perfected by the filing of the Uniform Commercial Code financing statement with the Illinois Secretary of State. The court need not address this issue because Weiss' rights in the collateral were not properly assigned under the Pledge Agreement. "[A] transfer does not occur until the debtor acquires rights in the property even if all the necessary steps for perfecting the transfer have been taken." Prior v. Farm Bureau Oil Co. (In re Prior), 176 B.R. 485, 496 (Bankr. S.D. Ill. 1995). See also U.C.C. § 9-203(b)(2), (b)(3); 810 ILCS 5/9-203(b) and the Official Comment, which explains in part:

> *Creation, Attachment, and Enforceability.* Subsection (a) states the general rule that a security interest attaches to collateral only when it becomes enforceable against the debtor. Subsection (b) specifies the circumstances under which a security interest becomes enforceable. Subsection (b) states three basic prerequisites to the existence of a security interest: value (paragraph (1)), *rights or power to transfer rights in collateral* (paragraph (2)), and agreement plus satisfaction of an evidentiary requirement (paragraph (3)). When all of these elements exist, a security interest becomes enforceable between the parties and attaches under subsection (a). Subsection (c) identifies certain exceptions to the general rule of subsection (b).

UCC § 9-203, cmt. 2 (emphasis added). *Accord* Am. Nat'l Bank & Trust Co. v. Matrix IV, Inc. (In re S.M. Acquisition Co.), 296 B.R. 452, 463-64 (Bankr. N.D. Ill. 2003).

"Under Illinois law an assignment constitutes a transfer of some identifiable property, claim or right from assignor to assignee." Raleigh v. Haskell (In re Haskell), No. 96 B 14602,

---

[4] Because the court finds that R.C.M. and the Marconi Trust do not have a security interest in Weiss' interests in the Halyard Companies, the court need not address the element of valuation of collateral and whether Weiss has failed to provide adequate protection.

10

1998 WL 809517, at *3 (Bankr. N.D. Ill. Nov. 19, 1998) (citing Charles Poch, Inc. v. Nat'l Tire Servs., Inc. (In re Nat'l Tire Servs., Inc.), 201 B.R. 788, 789 (Bankr. N.D. Ill. 1996)). There is no particular form of assignment that is required; however, the items being assigned must be assignable. Id. "In addition to the requirement that assigned items be assignable, *compliance with an agreement controlling the procedure for transfer of an interest is also necessary for a proper assignment.*" Id. (citing In re Ainslie & Belle Plaine Ltd. P'ship, 145 B.R. 950, 952 (Bankr. N.D. Ill. 1992)) (emphasis added).

Neither the court nor the parties found a reported case on the validity of transferring an interest in a limited liability company without securing the consents required in that company's operating agreement. However, some of the Halyard Companies are limited partnerships instead of limited liability companies. In Newcombe v. Sundara, 654 N.E.2d 530 (Ill. App. Ct. 1995), the appellate court held that a debtor's attempt to assign a limited partnership interest as collateral for a loan is invalid if the partnership agreement requires consent of the general partner and it was not obtained. The Newcombe court first decided that limited partnership interests are "general intangibles" governed by Article 9 of the Uniform Commercial Code. Id. at 533. Next, the court held that if the partnership agreement requires consent of the general partner before any interest can be transferred, the debtor's pledge of the limited partnership as security for a loan was unenforceable without that consent:

> Plaintiffs next charge that the plain language of Article 15 of the limited partnership agreement restricts the outright assignment or transfer of a partner's interest but does not expressly prohibit the creation of a security interest. . . . Although the limited partnership agreement does not explicitly prohibit the creation of a security interest, a fair reading of Article 15 as well as the evidence before the circuit court indicates that the limited partners could not transfer *any* interest, including pledging their interests as security for a debt, without the consent of the general partner. Section 15.1

> prohibits the limited partners from assigning or transferring their partnership interests without the general partner's approval. . . .
>
> There was sufficient evidence for the circuit court to have concluded that Article 15 precluded Sundara's assignment of a security interest because he never obtained IMREC's consent and plaintiffs never provided IMREC a copy of the assignment with language agreeing to be bound by the partnerships' rules. The circuit court's finding that the partnership agreements precluded the assignment of a security interest is not "palpably erroneous."
>
> Plaintiffs propose that the Uniform Limited Partnership Act (ULPA), which was in effect when the partnerships were created, specifically allowed a limited partner to assign his interest. Here, the limited partnership agreements merely subject assignments or transfers of a partner's interest to the requirement of securing IMREC's prior approval. The agreements do not absolutely prohibit assignments. Accordingly, there is no conflict between the limited partnership agreements and the ULPA.

Id. at 534-35.

The cases cited above, including Newcombe and Haskell, hold that a business' organizational agreement may control the procedure for creating a valid assignment of an interest in that business. There is no basis to treat limited liability or other closely held companies differently. Indeed, a limited liability company, like the limited partnership in Newcombe, is usually considered a "general intangible" under Article 9 of the U.C.C. In re Dreiling, No. 05-64189, 2007 WL 172364, at *2-3 (Bankr. W.D. Mo. Jan. 18, 2007).

Even though no consent was obtained before executing the Pledge Agreement, R.C.M. and the Marconi Trust argue that Kaufman's subsequent waiver cured the assignment's defects. Kaufman signed the waiver over three years after the Pledge Agreement was executed. Clearly this is not *prior* written consent as required by the operating agreements. If a waiver made on the eve of Weiss' bankruptcy filing retroactively validates the Pledge Agreement, R.C.M. and

the Marconi Trust are *preferred* over Weiss' other unsecured creditors.[5]  Such a result contravenes the prime bankruptcy policy of equality of distribution among creditors of the debtor. J.A.S. Mkts., 113 B.R. at 197; Moore v. Bay (In re Sassard & Kimball, Inc.), 284 U.S. 4 (1931).

---

[5] The court agrees with Weiss that even if Kaufman's waiver created a security interest on or about April 12, 2007, the waiver would be subject to attack under § 547 of the Bankruptcy Code as a voidable preference. This is because the waiver constitutes the "transfer" that causes the security interest to attach. The attachment, and resulting security interest, do not relate back to the Pledge Agreement, but occur within the 90 day preference period. Pineo v. Charley Bros. Co. (In re J.A.S. Mkts.), 113 B.R. 193, 198-99 (Bankr. W.D. Pa. 1990) explains and accepts this analysis:

> The Trustee asserts that under 11 U.S.C. § 547(e)(3), a security interest cannot attach until the debtor has acquired rights to the property in question; that a security interest is voidable to the extent it attached within 90 days of the filing of the petition in bankruptcy. Therefore, the Trustee asserts that Super Valu's security interest in inventory delivered and receivables generated subsequent to November 15, 1985 constitute property acquired by the debtor during the preference period and thus Super Valu's security interest therein must be rejected.
>
> The Trustee asserts that Super Valu's security interest in inventory and receivables, to the extent that the security interest attached during the preference period, is avoidable as a preference, that Super Valu was therefore unsecured as to such assets, and therefore, when it received a percentage of its unsecured indebtedness, while other unsecured creditors received no payment, it enjoyed a preference voidable under § 547.
>
> Bankruptcy Code § 547(e)(3) states, "for purposes of this Section, a transfer is not made until the debtor has acquired rights in the 'property transferred.'" It thus appears that absent some exception protecting Super Valu, all security interests in inventory acquired during the preference period are voidable.

The exception for certain after acquired accounts receivable and inventory in § 547(c)(5) would not apply to Weiss' business interests or the proceeds of selling those interests. See Braunstein v. Karger (In re Melon Produce), 976 F.2d 71, 75-76 (1st Cir. 1992). Specifically,

> [i]n order to obtain the "relation back" that he needs, Karger would have to argue successfully that his secured interest in "rights to money" fits within the special exception for "receivables" (and "inventory") in the Bankruptcy Code's preference section. 11 U.S.C. § 547(c)(5). . . . **We have not found authority for the proposition that the exception extends to a single right to payment arising from a major corporate change outside of the ordinary course of business -- such as a debtor's sale of all its major assets, as occurred here.**

Id. (emphasis added).

13

R.C.M. and the Marconi Trust also argue that even if Weiss did not assign his entire interest in each Halyard company, he did assign his interests in the "proceeds." First, the court disagrees with this characterization. Weiss attempted to assign his entire interest in the various entities, not portions thereof. Schedule 1 to the U.C.C. financing statements lists precisely the same interests set forth in Exhibit A to the Pledge Agreement. R.C.M. & Marconi Ex. 3, 4. Both documents define the collateral assigned as the "Entire interest of Debtor" or the "Entire Class B interest of Debtor." Nowhere does the financing statement or Pledge Agreement separate out "proceeds" or distributions independent from Weiss' interests. Exhibit A merely includes "proceeds" in the description of the entire assigned business interest. There is no evidence to suggest that there was an assignment of the proceeds or distributions apart from the failed assignment of the entire interest.

Second, the term "proceeds," as defined in Article 9 of the Commercial Code, is so broad that there is very little difference between the right to proceeds and the right to the full business interest:

> "Proceeds," except as used in Section 9-609(b) [810 ILCS 5/9-609], means the following property:
>
> (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
>
> (B) whatever is collected on, or distributed on account of, collateral;
>
> (C) rights arising out of collateral;
>
> (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
>
> (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of

14

>   the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

UCC § 9-102(64); 810 ILCS 5/9-102(64).

Third, and most important, all of the operating agreements expressly prohibit the assignment of any *portion or part* of the business interest without consent. "Proceeds," distributions, income or profits all constitute a portion or part of the interest in the business entity. This applies to both partnerships and limited liability companies. See First City Sec. v. Shaltiel, No. 93 C 7504, 1995 U.S. Dist. LEXIS 214, at *13-16 (N.D. Ill. Jan. 10, 1995) (dealing with partnerships); First Nat'l Bank of Lincolnshire v. Sterling Care P'ship, No. 84 C 8113, 1985 WL 2104, at *2 (N.D. Ill. July 17, 1985) (same). "Under Illinois law, the right to the interest and the dividends from collateral is inherently tied to the ownership of the collateral itself." First Nat'l Bank of Lincolnshire, 1985 WL 2104, at *2. The Illinois statutes governing limited liability companies define a member's interest as including right to distributions: "'Membership interest' means a member's rights in the limited liability company, including the member's right to receive distributions of the limited liability company's assets." 805 ILCS 180/1-5. A member does not own the underlying assets of the limited liability company and can only transfer his distributional interest. See 805 ILCS 180/30-1. A transferee of a distributional interest may become a member of a limited liability company if and to the extent that the transferor gives the transferee the right *in accordance with authority described in the operating agreement or all other members consent.* 805 ILCS 180/30-10 (emphasis added). These provisions clearly indicate that the profits or proceeds of a limited liability company are part of the membership interest, which cannot be transferred without following the procedures outlined in the operating agreement. In this case, all of the agreements prohibited the transfer of a portion of the membership interest without the appropriate consents. So, even if Weiss assigned "proceeds"

15

separate from his entire interest, which he did not, such a partial assignment of his business interest also fails without consent.

Promissory Estoppel

R.C.M. and the Marconi Trust argue that they detrimentally relied on representations made by Weiss in the promissory notes and the Pledge Agreement, and that Weiss should therefore be estopped from using his own violation of the operating agreements to his benefit. "Promissory estoppel is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct." Solow v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 180 B.R. 851, 943 (Bankr. N.D. Ill. 1995) (quoting Lawrence v. Board of Educ. of Sch. Dist. 189, 503 N.E.2d 1201, 1210 (Ill. App. Ct. 1987)). In order to establish a claim for promissory estoppel, R.C.M. and the Marconi Trust must demonstrate that (1) Weiss made an unambiguous promise to R.C.M. and the Marconi Trust, (2) R.C.M. and the Marconi Trust relied on such promise, (3) R.C.M. and the Marconi Trust's reliance was expected and foreseeable by Weiss, and (4) R.C.M. and the Marconi Trust relied on the promise to their detriment. See Dumas v. Infinity Broad. Corp. & WUSN-FM, 416 F.3d 671, 676-77 (7th Cir. 2005).

In support of this argument, R.C.M. and the Marconi Trust argue that the promissory notes and related modification agreements constituted unambiguous promises, that they relied upon those promises, and that such reliance was foreseeable and justifiable. They also argue that they relied on those promises to their detriment, and therefore, Weiss should be estopped from asserting that the Pledge Agreement is invalid. This argument is without merit.

The court finds that the promise made by Weiss in the form of the Pledge Agreement was not unambiguous as required under Illinois law. The evidence adduced at trial showed that

16

Weiss crossed out a portion of the Pledge Agreement to indicate that he did not have the authority to transfer his interests in the Halyard Companies. Weiss testified that he informed Robert Marconi that he lacked this authority. Gottlieb testified that Weiss informed him that he lacked this authority. Even further, the Pledge Agreement was modified to reflect that Weiss lacked the authority to transfer his interests. Weiss' statements and actions surrounding the Pledge Agreement indicate that he did not make an unambiguous promise. Without an unambiguous promise, R.C.M. and the Marconi Trust cannot recover on a theory of promissory estoppel.

Moreover, R.C.M. and the Marconi Trust knew that Weiss did not have the authority to transfer his interests without prior consent. Given that R.C.M. and the Marconi Trust also knew that no prior consent had been obtained, the court finds that any reliance on the part of R.C.M. and the Marconi Trust was not reasonable under the circumstances. The court need not reach the issue as to whether the reliance was expected and foreseeable. Based on the evidence before it, the court concludes that R.C.M. and the Marconi Trust have not established the elements for a claim of promissory estoppel.

R.C.M. and the Marconi Trust urge the court to ignore defects in Weiss' assignment for policy reasons. They assert that the consent provisions in the operating agreements are designed to protect other members or partners of Weiss from having a new partner or co-member forced on them. As a result, Weiss should not be permitted to turn the consent "shield" into a sword and invalidate his pledge. This argument has little appeal in a bankruptcy context where there are many other creditors with large unsecured claims. If R.C.M. and the Marconi Trust are secured, they take Weiss' assets ahead of the other unsecured creditors. Like a trustee in bankruptcy, a Chapter 11 debtor owes a fiduciary duty to all his creditors:

[A] Chapter 11 debtor is a fiduciary of his creditors and the estate. In re Telemark Mgmt. Co., Inc., 41 B.R. 501 (Bankr. W.D. Wis. 1984). A debtor-in-possession holds its powers in trust for the benefit of the creditors and has the duty to protect and conserve property in his possession for their benefit. In re Modern Office Supply, Inc., 28 B.R. 943 (Bankr. W.D. Okla. 1983), In re Devers, 759 F.2d 751 (9th Cir. 1985).

In re Schipper, 109 B.R. 832, 835 (Bankr. N.D. Ill. 1989).

In this Chapter 11 case, Weiss stands in the shoes of a bankruptcy trustee, charged with the duty to challenge security interests that are defective or preferential. It is no longer a contest between Weiss, R.C.M. and the Marconi Trust. The interests of all the creditors must be safeguarded. Under the circumstances, the court cannot ignore the requirements of attachment, perfection and validity of security interests in favor of a policy that has no application to the fundamental goal in bankruptcy, which is equal treatment of similarly situated creditors.

## CONCLUSION

For the reasons stated above, R.C.M. and the Marconi Trust, as unsecured creditors, have not established cause to modify the automatic stay under Bankruptcy Code Section 362(d). The motion for relief from stay filed by R.C.M. Industries, Inc. and Robert C. Marconi, as Trustee of the Robert C. Marconi Declaration of Trust dated June 30, 1992, is denied.

Date: OCT 23 2007

PAMELA S. HOLLIS
United States Bankruptcy Judge

18